[Civil No. 3137. Filed May 5, 1932.]

[11 Pac. (2d) 347.]

TOM REED GOLD MINES COMPANY, a Corporation, Appellant, v. JOSEPHINE BERD MOORE, as Administratrix of the Estate of JOE BERD, Deceased, Appellee.

Mr. Louis L. Wallace and Mr. Carl D. Hammond, for Appellant.

Mr. S. D. Stewart, for Appellee. .

ROSS, J.—The plaintiff, Josephine Berd Moore, as administratrix, brought this action under the Employer's Liability Act (article 4, chap. 24, §§ 1384–1390, Rev. Code 1928) against the defendant mining company to recover damages for the death of her husband. She alleges that on August 9, 1924, the decedent, while working in defendant's mine, was injured in an accident due to the condition or conditions of his occupation as a mine driller, and that thereafter, on February 8, 1928, he died as a result of such injuries, leaving as his survivors the plaintiff and four minor children. Complaint was filed September 7, 1929.

The only defense in the answer worthy of notice was a general denial.

The case was tried before a jury, and resulted in a verdict and judgment against the defendant. The defendant has appealed from the judgment and an order overruling its motion for a new trial.

The questions we are asked to consider and decide are: (1) Whether or not the plaintiff was entitled to read the stenographic transcript of the testimony of the decedent and three others given on a former trial; and (2) whether or not the proximate cause of death was the accident and injury of August 9, 1924.

For the injury the decedent claimed to have sustained in said accident he himself brought an action for damages, and on the trial thereof he testified and in his testimony related the circumstances of his injury and the result thereof upon his health and ability to work. *Tom Reed Gold Mines Co.* v. *Berd*, 32 Ariz. 479, 57 A. L. R. 55, 260 Pac. 191. This testimony, and the testimony of three other witnesses bearing upon the decedent's health, appearance, and ability to work before and after the alleged injury, was stenographically taken down and transcribed and read on the present trial. If the testimony of wit-

nesses at the former trial, now dead or out of the jurisdiction of the court, can be read from the transcript into another case, even between the same parties or privies, it is because it is authorized by statute, for such a procedure is not in accordance with the rules of the common law. Without statutory sanction such a transcript, like any other memorandum of what the witnesses testified, might be used to refresh the witnesses' recollection, but it could not be used as original evidence. 22 C. J. 440, § 530; *Duffy* v. *Blake,* 91 Wash. 140, 157 Pac. 480.

While the actions are different, they grow out of the same accident. For the injuries the employee (Joe Berd) suffered he was entitled to recover damages. The right and remedy were personal to him. When he died, they died. But, if his personal representative is able to trace his death to the accident in which she claims he was injured and for which he sued defendant, she may recover damages for the benefit of the surviving widow and children (section 1387, Rev. Code 1928), a new and distinct right of action. *Atchison, T. & S. F. Ry. Co.* v. *Hopkins,* 24 Ariz. 103, 207 Pac. 66. The difference in the two actions is that the plaintiffs are not the same and the measure of damages is different.

The best evidence rule would not permit the proving in the last action what the witness testified to in the first, not even if the parties and issues were identical. But the rule has long been, and it has its origin in the necessities of the case, that, if the witness in the meantime has died or is not available, his testimony given in an earlier trial of the same case is admissible. The rule is often stated to be that the parties and issues in the two actions or proceedings must be the same, yet it is well settled that it is only necessary that they be essentially the same; the word "parties" comprehending privies in blood, in law, or in estate. *McInturff* v. *Insurance Co.,* 248 Ill. 92,

140 Am. St. Rep. 153, 21 Ann. Cas. 176, and note at page 179, 93 N. E. 369; 22 C. J. 428, §§ 513, 514. Neither is it necessary to entitle the evidence on the former trial to be admitted in a subsequent one that the causes of action be identical. If the subject matter to which the evidence relates is the same, it is admissible. *Cohen* v. *Long Island R. Co.,* 154 App. Div. 603, 139 N. Y. Supp. 887; 22 C. J. 430, § 515. Of course, there must have been, in addition to the two essentials above enumerated, a showing that the party against whom such evidence is offered either cross-examined, or had the opportunity to cross-examine, such deceased or inaccessible witness in the previous trial. 22 C. J. 431, § 516.

Under the common law, the method of proving the former evidence of a witness, since deceased or unavailable, was by a person who heard him testify. 22 C. J. 442, § 532; *Atchison etc. Ry. Co.* v. *Osborn,* 64 Kan. 187, 91 Am. St. Rep. 189, and note at page 206, 67 Pac. 547.

In many jurisdictions this rule has been modified by statute expressly authorizing the reading of the testimony of such witness from a transcription of the court reporter's shorthand notes taken upon the former trial, if the conditions as to parties and issues and opportunity to cross-examine required under the common-law rule are present. In other words, such statutes, as interpreted, simply provide a substitute or another method of proving such testimony, but leave the rule as to its admissibility the same. Typical of such statutes is New York's section 830, Code of Civil Procedure (now Civil Practice Act, § 348), reading as follows:

"Where a party or witness has died . . . since the trial of an action . . . the testimony of the decedent . . . taken or read in evidence at the former trial . . . may be given or read in evidence at a new trial . . . of the same subject-matter in the same

or another action or . . . proceeding between the same parties to such former action or proceeding.''

Under this statute it was held, in *Cohen* v. *Long Island R. Co., supra,* that the testimony of a witness who saw the accident in which a brother and a sister were killed, given in an action by the administrator for the death of one of them, could be read in an action by the same administrator for the death of the other, it appearing that said witness had died in the meantime. The court there said:

''The defendants are the same in both actions. The 'subject-matter' to which the evidence relates, to wit, the negligence or lack of negligence of defendants' servant, is the same in both actions, and it is worthy of note that to entitle evidence on a former trial to be read in a subsequent one it is not necessary that the causes of action shall be identical, but only that the subject-matter to which the evidence relates shall be the same. This leaves only open for consideration therefore the question whether in this particular instance both actions were prosecuted by the same person. In a literal sense the same person, to wit, Zipe Cohen, is plaintiff in both actions, although her qualification is different, and it is therefore claimed that Zipe Cohen as administratrix, etc., of Ida Cohen, deceased, is a different person in the eye of the law from Zipe Cohen, as administratrix, etc., of Jacob Cohen, deceased. The distinction is, I think, for the purposes of the question now under consideration rather apparent than real.''

The rule here stated seems to be the one generally followed under similar statutes. Our statute, section 4415 of the Revised Code of 1928, is as follows:

''Whenever in any court of record the testimony of any witness in any civil action shall be phonographically reported by an official court reporter and certified by him to be correct, and thereafter said witness shall die or be beyond the jurisdiction of the court in which the action is pending, and his absence is not procured by the party offering the evidence, either

party may read in evidence the testimony of said witness in any subsequent trial of or proceeding had in the same action, subject only to the same objection that might be made if said witness were upon the stand and testifying in open court.''

It is seen that this statute is materially different from the New York statute. However, under the rule in the Cohen case we think we could reasonably hold that Joe Berd, suing in his own right for personal injuries, and his personal representative, suing for his death growing out of the same accident, were in privy sufficiently to authorize the reading of the former's testimony in the latter's action. But our statute, unlike that of New York, requires that it be in a ''trial of or proceeding had in the same action'' before ''either party may read in evidence the testimony of said witness.'' As we have seen, the action by the administratrix is not the same as that in which the deceased witness testified. It is not enough under our statute that the litigation in the two actions or proceedings be concerning ''the same subject matter''; that is, the same accident. The litigation, it appears, must be in the same action.

Our statute permitting the transcript of the testimony of a deceased witness or one beyond the jurisdiction of the court to be read in evidence in a subsequent trial is somewhat exceptional in its terms. Although it was first adopted as paragraph 2537 of the Revised Statutes of 1901, it has received no direct interpretation by the courts of this state. A somewhat thorough search has not disclosed to our entire satisfaction its source, but it is so nearly the same as Nevada's section 5472, Revised Laws of 1912 (section 9019, Comp. Laws 1929), that it may have been taken therefrom. The only interpretation the statute has received is found in *Martin* v. *Duncan Automobile Co.,* (Nev.) 296 Pac. 24, wherein it was held that the testimony of witnesses ouside of the jurisdiction of

the court, taken in an application for a receivership, might be read in the main action to foreclose a chattel mortgage on some automobiles, on the ground that the application for a receiver was a "proceeding" in the action to foreclose.

It is claimed here that *Inspiration Consolidated Copper Co.* v. *Bryan,* 31 Ariz. 302, 252 Pac. 1012, is authority sustaining the court's ruling admitting such evidence. In that case the action was originally brought by an administrator who under the statutes was not the proper party plaintiff. Upon application therefor the court permitted the parents of the deceased to be substituted for the administrator, on the ground that the action was for their benefit and under the statutes should be prosecuted by them. Id., 23 Ariz. 541, 205 Pac. 904; Id., 24 Ariz. 47, 206 Pac. 402. This was permitted on the theory that it was all the time an action, even while pending in the administrator's name, for the benefit of the parents of the decedent. On that ground and for that reason it was held that "the admission of the transcript of the testimony of certain witnesses, given at the prior trial where Riley Bryan as administrator was plaintiff," in a subsequent trial wherein the parents were the plaintiffs, was not error. The court, in disposing of the contention that the causes of action were not the same, said, after quoting our statute:

"It is urged first that the testimony of these witnesses was not given in the same cause, within the meaning of the paragraph, but in a cause in which the parties and issues were wholly different. We think that under the decisions of this court on the previous appeals of this matter above cited the cause was the same within the meaning of the statute."

It is too plain for discussion that the causes of action in the Bryan case were the same and that the trial in each case was of the same cause of action.

The Washington statute, section 1247, Rem. & Bal. Code, reads as follows:

"The testimony of any witness, deceased, or out of the state, or for any other sufficient cause unable to appear and testify, given in a former action or proceeding, or in a former trial of the same cause or proceeding when reported by a stenographer, or reduced to writing, and certified by the trial judge, upon three days' notice to the opposite party or parties, together with service of a copy of the testimony proposed to be used may be given in evidence in the trial of any civil action or proceeding, where it is between the same parties and relates to the same matter."

In *Duffy* v. *Blake,* 91 Wash. 140, 157 Pac. 480, the court, construing said section, said:

"Under this statute the testimony, to be available, must be given in a former trial of the same cause. . . . Statutory rights of this character cannot be extended beyond the language of the privilege, and if the statute is relied upon it must be plain that it covers the offer. We are therefore of the opinion that the testimony was not admissible under the statute."

Our statute providing for the use of the transcript of the testimony of a witness deceased or absent from the jurisdiction of the court is very much like, but more restrictive in its requirements than, the Washington statute. It can only be used, according to our statute, in a subsequent trial of the same "action." It was urged in the case of *Duffy* v. *Blake, supra,* that the testimony was admissible under the common-law rule, but the court rejected such proposition on two grounds: (1) That there was no privity of parties nor identity of issues, and (2) if there had been it was said the testimony could not be legally read into the case because under the common law the reporter's notes, or the transcript thereof,

could only be used to refresh the memory of the witness. It was not original evidence.

It may be true that the object of our statute was to make the transcript of the testimony of a witness, since deceased or out of the jurisdiction of the court without procurement, competent evidence in any subsequent trial involving the same subject matter, where the parties are the same or in privy, but, if so, the language employed was, to say the least, unfortunate. If such testimony may be used in an entirely different action, notwithstanding the statute limits its use to "any subsequent trial of or proceeding had in the same action," then it could be extended to include the testimony of witnesses who have since become insane or are for any reason inaccessible, although the statute limits it to the testimony of witnesses who have *died or who are beyond the jurisdiction of the court,* etc. If we can extend the language used by the legislature to include the present testimony, where the actions are different, we could as reasonably extend it to include the testimony of any witness not accessible, whatever the reason. It seems to us under the plain language of the statute the transcribed testimony in the action by Berd for personal injuries could not be read into the action by his administratrix for the benefit of the surviving widow and children, and that it was error to admit it over defendant's objection.

Defendant contends that the evidence, taken in its most favorable light, fails to show plaintiff's intestate died as a result of the injuries he claimed to have suffered on August 9, 1924, while in its employment. Those injuries, according to the complaint and the plaintiff's evidence, were occasioned when the decedent was in the act of moving a drilling machine from one place in the mine to another, out of the range of a round of shots about to be put off,

by his slipping and falling with the machine on his abdomen and groins and about his knees and legs. The injuries alleged were that he was "injured, crushed and bruised and suffered internal injuries and injuries to his back, spine, hips, certain nerves, muscles and other tissues of his body." There was no witness to the accident. Proof that there was an accident at the time and place claimed depended solely upon the testimony of the deceased. That he was in poor health and suffered much physical and mental pain thereafter seems very well established.

The deceased had, before August 9, 1924, had other mining accidents and injuries. In May, 1923, as exemplified by his pleadings, he brought suit against the Miami Copper Company for personal injuries he claimed to have suffered on March 22, 1923, while in its employment. The injuries alleged consisted of a perforation of the left eardrum, from a blast or explosion, which caused noises in his head and partial loss of hearing, so that he was incapacitated to follow his usual occupation of timberman. Again on March 5, 1924, he made a claim against the Old Dominion Copper Company for damages for personal injury while working in its mines. His injury was caused, as he claimed, by a rock falling on his back while he was shoveling muck. The location of the injury was in the lumbar region of his back. Those to whom he made claim said he walked in a rather stooped position, complained of severe pains, and appeared nervous. The company's doctor said:

"He was persistent in claiming injury to his back and even at the time of his discharge (March 29th) he still complained of pain."

The same witness said:

"An examination of his back revealed no evidence whatever of a bruise, laceration or anything else that I could see or feel."

Thus, according to the undisputed evidence, the decedent had within a period of a year and a half suffered three personal injuries, the last two being injuries to his back. After the last accident, he was either sent to or voluntarily went to Dr. Toler R. White, a practicing physician of Kingman, Arizona, who made an X-ray of his lower back. The X-ray did not show anything abnormal. This was in August of 1924, very soon after he claimed to have been hurt. The same physician again made an X-ray of his lower back in November of 1925, and again the showing was negative. He died in Phoenix on February 8, 1928, about three and one-half years after his claimed injury in defendant's mine. He was attended in his last illness by Dr. Victor S. Randolph, a physician and surgeon of wide learning and experience, especially in chest diseases. Dr. Randolph testified his "death was due to pneumoconiosis with a contributory cause of cardiac-hypertrophy and cardiac failure." This witness also said:

"Pneumoconiosis is a disease of the lungs caused by hardening of the lungs due to the deposit of dust particles in the lung tissues. In this case, probably due to a deposit of dust from many years of contact with dust in the mines in which he had worked."

Deceased was treated, we assume, immediately after he was hurt, although the record is silent as to the time, by Dr. Harry B. Chapman, a chiropractor. This witness testified that he was suffering with "a subluxation, an anterior subluxation of the fifth lumbar vertebra. A posterior subluxation at the sixth dorsal vertebra. Right lateral subluxation at the tenth dorsal vertebra, a tightened condition at the atlas, the first vertebra below the occipital or skull."

Dr. Chapman would not undertake to state when these disorders of the vertebrae took place. He

said possibly as long as a year before he saw the patient. If there were any bruises or lacerations on the patient's body at that time, the witness did not mention them. He diagnosed the ailment deceased was suffering with as traumatic neurosis; that is, a disease of the nervous system induced by a "blow, fall, broken bones, lacerated flesh—any injury that was caused from external causes."

If it be conceded, as it should in passing on this question, that the decedent was a victim of traumatic neurosis, the question is which one of the blows or lacerations or falls admittedly suffered by deceased brought it on. The first two were serious enough to cause him to seek and receive compensation or damages from his employers, and one of them was an injury to the lumbar region of his back.

Under the uncontradicted evidence, the decedent's death was caused by pneumoconiosis. There is no evidence that he died from injuries to his vertebrae or back. This the plaintiff concedes in her brief, but she says, if the injuries to the decedent's back hastened his death, she is entitled to recover damages. This as a general proposition is correct, but cannot be applied here, for the reason that the evidence fails to show whether the traumatic condition of decedent was due to the injury he received in the mines of Miami Copper Company or the mines of the Old Dominion Copper Company or in the mines of defendant. In *Butler* v. *Rule,* 33 Ariz. 460, 265 Pac. 757, we quoted with approval from *Matuschka* v. *Murphy,* 173 Wis. 484, 180 N. W. 821, the following:

"Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and that a jury can do no more than guess or conjecture as to which was in fact the efficient cause, the submission of such a choice to the jury has been consistently condemned by this court"—citing authorities.

We think this rule is decisive of this case.

Granting the deceased was a victim of traumatic neurosis, in which of the three accidents suffered by him did it originate? No witness pretended to say, and there is no evidence from which a jury could determine that vital question. Dr. Chapman says the trauma might have been suffered as long as a year before August of 1924.

The defendant's motion for a directed verdict, on the ground that the evidence failed to show that the injury to plaintiff's intestate in defendant's mine was the proximate and efficient cause of his death, should have been granted.

The judgment is reversed and the cause remanded, with the direction that the complaint be dismissed.

McALISTER, C. J., and LOCKWOOD, J., concur.