[Criminal No. 784.   Filed January 15, 1934.]

[28 Pac. (2d) 612.]

CLAYTON   CLIFFORD   ADKINS,   Appellant,   v.
STATE, Respondent.

Mr. H. O. Juliani and Mr. C. Wayne Clampitt, for Appellant.

Mr. Arthur T. La Prade, Attorney General, Mr. J. R. McDougall, Assistant Attorney General, and Mr. Clarence E. Houston, County Attorney, for the State.

SPEAKMAN, Superior Judge.—The appellant, Clayton Clifford Adkins, was charged by information filed in the superior court of Pima County, Arizona, with the crime of kidnaping, a felony, and upon conviction thereof was sentenced to life imprisonment in the state prison, from which judgment and conviction, and the order denying motion for new trial, he appeals.

Briefly the facts are as follows: That about midnight of February 4, 1932, one Gordon H. Sawyer was seized at his home in the city of Tucson by two masked men armed with guns and forced into his automobile. While one of the masked men drove, the other blindfolded Sawyer, packed cotton into his

ears, and tied his hands behind him. On the outskirts of the city, the car was stopped and Sawyer forced from his automobile into another automobile, Sawyer's automobile being abandoned at that point, at which point a third person joined the two masked abductors. After proceeding to a point near the appellant's ranch some four miles from Tucson, the car was stopped and there Sawyer was ordered to sign a certain letter demanding ransom in the amount of $60,000. Thereupon Sawyer was taken to the Adkins ranch-house, where appellant then resided, and held prisoner until early the following morning at which time they placed him in a dry well near the house where he remained until found by officers.

That on the morning of the 5th of February, the disappearance of Sawyer having been reported to the officers, two Tucson officers, during their investigation into the disappearance of Sawyer, and while following the tracks of the automobile to which Sawyer had been transferred after having been first abducted in his own automobile, at a point near the Adkins ranch came upon two men, one of whom was later identified as being the appellant, who were attempting to obliterate the tracks of the automobile which said officers were following. Upon sighting the officers the two men ran behind some brush; and upon being ordered by the officers to come forth, commenced shooting at the officers. After exchanging several shots, the two men escaped, fleeing in the direction of appellant's residence. That upon being reinforced, the officers went to appellant's house, and, while in search of the men who had fired upon them, entered the house and seized certain articles which were later introduced in evidence at the trial in which appellant was convicted. That shortly thereafter Sawyer was found in the dry well near appellant's residence where he had been placed by the men who abducted him.

That later and on February 14, 1932, appellant was found some sixteen miles from Tucson together with his automobile, and, upon being returned to Tucson, was then identified as one of the men who had fired upon the officers, and his automobile was identified as having made the tire tracks leading from Sawyer's abandoned automobile to the Adkins ranch-house. That a pair of shoes was found in the dry well where Sawyer had been placed, the testimony of the state tending to show that they had been sold to appellant a few months previously, and that the footprints on the ground where Sawyer's car was abandoned were made by these shoes. The testimony further shows that Sawyer was robbed of a sum of money while in custody of his abductors.

Appellant denies having taken part in the abduction, stating that on the day preceding the abduction three men came to the Adkins ranch, one of whom he had previously met in jail while serving a term for violation of the prohibition laws; that he and his sister went to Tucson leaving the three men at the ranch-house; that upon their return the three men were still there, stating that they were having car trouble. That thereupon the three men asked to borrow appellant's car, with which request appellant complied. Appellant testified that some time about midnight the three men returned with the said Sawyer, stating that they had a banker and were going to keep him at that place. Appellant states that he remonstrated but was told to keep quiet under threat of being shot. That he was then ordered to bed, but on the following morning was forced to assist in placing Sawyer in the dry well. Appellant further states that thereafter he and his sister were permitted by the three men to drive the car to the city of Tucson; that while there he and his sister called at the postoffice. The evidence further shows that thereafter a letter was delivered to the Southern Arizona Bank and Trust

Company, of which Sawyer was vice-president, demanding $60,000 in ransom.

Appellant first complains that the trial court erred in overruling his demurrer to the information filed by the county attorney, and on which the appellant was tried and convicted.

The statute under which the appellant was charged is section 4609, Revised Code of Arizona of 1928, which provides as follows:

"Every person who, maliciously, forcibly or fraudulently takes or entices away any person with intent to restrain such person and thereby to commit extortion or robbery, or exact from the relatives or friends of such person any money or valuable thing, is guilty of a felony."

The information is in the exact words of the statute. It is appellant's contention that the information is not sufficient in that it does not inform the defendant as to the time, place, and circumstances with enough certainty to inform the accused of the specific offense with which he was charged.

The sufficiency of an indictment or an information is prescribed by section 4982, Revised Code of 1928, which is as follows:

"The indictment or information is sufficient, if it can be understood therefrom: That it is entitled in the court having authority to receive it, though the name of the court be not stated; if an indictment, that it was found by a grand jury of the county in which the court was held, or, an information, that it was returned and presented to the court by the county attorney of the county in which the court was held; that the defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with a statement that his true name is to the jury or to the county attorney, unknown; that the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the county, is triable therein; that the offense was committed at some time prior to the time of

finding the indictment or filing the information; that the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended, and as to enable the court to pronounce judgment upon a conviction, according to the right of the case.''

There can be no question but what the requirements of this section have been fully met by the allegation of the information, including the time, place and circumstances surrounding the commission of the offense, as announced in section 4609, *supra*. We think beyond question that the act charged in the information is set forth in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended. In order to sustain appellant's contention, it would be necessary for the prosecutor to plead the state's evidence, which, of course, is not required by any rules of pleading. In our opinion the information was not subject to the objection urged by appellant, and it appears to be sufficient in all respects.

Appellant's next two assignments of error deal with the court's denial of an application for a change of venue, and the court's denial of appellant's motion for a continuance. Since appellant bases these two assignments on practically the same grounds, for the sake of brevity we will consider them together.

Appellant filed an application for a change of venue from Pima county, and therein asks that the trial court transfer the trial of this case to some other county in the state of Arizona for the reason that bias and prejudice existed against the defendant in Pima county to the extent that he could not get a fair and impartial jury, and supports this application by an affidavit of appellant to the same effect. In further support of the application, counsel for appellant took the witness-stand, and, in substance, testified that

he had spoken to perhaps one hundred persons in Pima county and that he knew that feeling against the defendant was very bitter; that press articles and editorials and news articles concerning the defendant had created bitterness and prejudice against the defendant; that a reward of $5,000 was offered by the Southern Arizona Bank, of which Gordon Sawyer was vice-president; and that Gordon Sawyer and the institution with which he was connected were very influential in the county, and that he had requested many people to sign affidavits supporting the application and had been refused.

In answer thereto the county attorney presented numerous controverting affidavits, and the court thereupon denied appellant's application for a change of venue. Counsel for appellant thereupon moved the court that subpoenas be issued for the signers of the controverting affidavits, contending that he had a right to cross-examine these affiants for the reason that appellant had the right to be confronted with the witnesses who appear against him, which motion, together with the application for a change of venue, was denied.

The statutes of Arizona applicable to this question provide that when such an application is made, if the court is satisfied that the representation of the defendant is true, an order shall be made for the removal of the action to an adjoining county for trial. Sections 5023, 5024. According to these sections, the granting of such an application rests solely within the sound discretion of the trial court, and without an abuse of such discretion this court will not reverse. Since the granting of such application is purely a matter of discretion with the trial court, it naturally follows that if the controverting affidavits are in proper form, properly sworn to, and in all respects regular, then it becomes a further matter of discre- tion with the trial court as to whether or not the

trial court will examine the affiants who made such controverting affidavits. Such affiants were not witnesses against appellant within the meaning of the law, as such affidavits did not in any manner whatsoever pertain to the accusation against appellant, and the signers thereof were in no manner accusers of appellant.

Appellant filed a motion for continuance, and therein stated that appellant could not have a fair and impartial trial in Pima county at the time this cause was regularly set for trial for the reason that bias and prejudice, and an excited and inflamed feeling on the part of prospective jurors had been engendered by and through the agitation of the press relative to the kidnaping of the young son of Colonel Charles A. Lindbergh, and that nine jurors who sat in the trial of this case which had previously resulted in a mistrial on account of a disagreement of the jurors, had voted for a conviction of appellant and had refused to discuss the case in the light of the evidence submitted, and that unless a continuance be granted until the public clamor and excitement subsided, appellant would not be able to secure a fair and impartial jury.

The matter of a postponement of criminal cases is also a matter which rests within the discretion of the trial court, and without an abuse thereof this court will not remand a case for new trial. *Territory* v. *Barth*, 2 Ariz. 319, 15 Pac. 673; *Quayle* v. *State*, 19 Ariz. 91, 165 Pac. 331.

An examination of the record does not disclose any abuse of discretion on the part of the trial court in either of these assignments.

Appellant further contends that the trial court erred in abuse of its discretion in not allowing to be read the evidence of Mrs. Clayton Clifford Adkins, wife of appellant, which testimony was given at a former trial of this case. Counsel for appellant offered to

testify that two days prior to the trial of this case, that he, counsel, received a telegram from Mrs. Adkins stating that she was ill and unable to attend the trial, and that she was at that time at her home in Williams, Arizona, and counsel thereupon offered to read her testimony, which offer was denied.

We fail to find any error in this refusal as it was not a matter of discretion of the trial court, but purely a matter of law, which is provided by section 5058, Revised Code 1928, which is to the effect that where a witness is beyond the jurisdiction of the court, or is dead, and where his testimony has been reported by an official court reporter and certified to by him to be correct, then either party may read the evidence of such witness in any subsequent trial.

Since the town of Williams is within the state of Arizona, and appellant had issued a subpoena out of the trial court, and since the witness was subject to contempt of court by not complying therewith, we cannot see that the court erred in its refusal, because this matter was not within the purview of this section of the statute.

A further contention of appellant is that the court erred in admitting in evidence certain articles consisting of a hoodwink scarf, a pair of canvas gloves, cartridge boxes, certain shells and cartridges, a flashlight and a sack, for the reason that these articles were obtained without a search-warrant, and as a result of illegal search and seizure.

We have given this question much consideration for the reason it is contended that by such search and seizure appellant was deprived of his constitutional rights by a violation of sections 8 and 10 of article 2 of the Constitution of the state of Arizona.

Section 8 is as follows: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." And section 10: "No

person shall be compelled in any criminal case to give evidence against himself."

These two sections are a part of the fundamental law of the land, having come to us through similar provisions in the Constitution of the United States. As a general rule courts have guarded, and should regard, these constitutional rights of every citizen, regardless of who he is and regardless of the crime with which he is charged, and in deciding the question in this assignment, we do not mean to say or even intimate that the officers of the state of Arizona, or other persons, are not curbed by these constitutional provisions, because if courts fail to recognize these constitutional rights, then they are dislodging one of the corner-stones in the foundation of our government.

However, after considering this matter, we have come to the conclusion that the court did not commit error in admitting in evidence these articles complained of by the appellant.

The facts, as hereinbefore stated, plainly show that before these articles were seized, two deputy sheriffs of Pima county were investigating the supposed kidnaping of Gordon Sawyer; that their investigation led them to a point near the home of appellant, and while so investigating and while at that point, several men who were concealed behind brush and trees fired upon the officers and then fled in the direction of appellant's home; that thereupon the deputy sheriffs upon being reinforced by other peace officers, and while in hot pursuit of the men who had fired at them, came upon the house of appellant which was situated on the desert a few miles from the city of Tucson.

While it is true that the officers did not yet know the crime of kidnaping, a felony, had been committed, yet a felony had been committed in their presence by the fact that the fleeing men had fired upon them in an endeavor to take their lives. It

thereupon became their right and duty to pursue and arrest the fleeing men, even to the extent of entering the home of appellant by breaking doors or barriers for the purpose of making the arrest, if they had reasonable cause to believe that these men were concealed in appellant's home. Section 4937, Rev. Code 1928. The officers were, therefore, lawfully within the home of appellant, and upon such lawful entry they had the right to make a reasonable search for any articles used in the commission of the crime of shooting at the officers, and in such search if they found any articles which they believed to have been used in the commission of the crime of kidnaping, they had the right to take possession of such articles for the purpose of using them in evidence.

During the course of the trial, the state called one Harold Roberts as a witness who testified that during the officers' pursuit of the men who had fired upon them he met one John Hufft, and, while engaged in a conversation, he gave Hufft a description of a man whom they were pursuing. Upon cross-examination by appellant's counsel, Harold Roberts was asked whether or not he would know Hufft if he again saw him, to which the witness answered, "I don't believe I could." Thereupon the attorney for appellant asked the court for permission to call John Hufft in the courtroom for the purpose of making a test to determine whether or not the witness Roberts could identify him, which was refused. We fail to see any error in this refusal, as Roberts in effect said that he could not recognize Hufft and had the court permitted such test, it would have been only a wasted effort.

Appellant assigns as error the denial of appellant's motion for a directed verdict in his favor at the close of the state's case, because of the insufficiency of the evidence. An examination of the evidence

submitted clearly shows that it was the duty of the trial court to submit the case to the jury.

Appellant makes several assignments of error in which he contends that the trial court committed error in its instructions to the jury, and in refusing instructions submitted by appellant. We have made· a careful examination of the instructions submitted by appellant and find that the trial court gave the same instructions in substance though in different language. The court's action in refusing other requested instructions was proper for the reason that the same were purely a comment on different portions of the evidence. This court has repeatedly held that it is not within the province of the lower court to comment upon the weight of the evidence, or single out and comment on any particular portion thereof in its instructions. Upon a careful examination of the instructions given by the court, we find that the same is a fair and impartial enunciation of the law applicable to the case. Therefore, we find no error in the court's instructions, or in its refusal to give the requested instructions.

Appellant has numerous other assignments of error, all of which we have carefully examined, and have come to the conclusion that they have no merit.

Finding no error in the record, the judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.

NOTE.—Judge SPEAKMAN of the Superior Court of Maricopa County sat in the place of Judge LOCK-WOOD, who on account of illness was unable to participate in the hearing.