447 P.2d 874

**STATE** of Arizona, Appellee,

v.

**Manuel Duran SIANEZ, Appellant.**

**No. 1846.**

Supreme Court of Arizona.
In Banc.

Dec. 6, 1968.

Rehearing Denied Jan. 14, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by Norval C. Jesperson, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, by Grant Laney, Deputy Public Defender, for appellant.

McFARLAND, Chief Justice:

Two informations were filed against defendant-appellant, Manuel Duran Sianez, each charging him with the crime of forgery on a different date. The two cases were consolidated for trial, and defendant was found guilty of both crimes. He was given a sentence of ten years to ten years and one day on each, the sentences to run concurrently.

The evidence showed that some Travelers Express money orders had been stolen from the locked store of James Wiltshire, in Indio, California, and that, before the theft, the money orders were blank. James Stuard, a State witness, testified that he saw defendant write on the blank money orders. A handwriting expert testified that in his opinion the handwriting on the money orders was that of defendant. There was no evidence that a person named Mary Stuard existed, or that such a person had given defendant permission to sign her name. The State presented evidence of circumstances sufficient to justify a jury in concluding that defendant had the intent to defraud.

The language of the information in each case was as follows, except for the date:

"FORGERY committed as follows, to-wit: The said Manuel Duran Sianez on or about the (date) * * * with intent to defraud, did sign the name of a fictitious person, to wit: Mary Stuard, knowing he had no authority so to do, all in violation of A.R.S. Sec. 13–421."

Defendant contends that the informations are defective because they fail to charge the commission of a public offense. Specifically, he argues that they do not describe the document which he is alleged to have forged.

A.R.S. § 13–421 reads, in part, as follows:

"A. A person is guilty of forgery who, with intent to defraud:

"1. Signs the name of another person, or of a fictitious person, knowing that he has no authority so to do * * *"

Rule 115, Rules of Criminal Procedure, 17 A.R.S., states the requirements of a valid and sufficient information as follows:

"A. The indictment or information may charge, and *is valid and sufficient* if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

"1. By using the name given to the offense by the common law or by a statute.

"2. By stating so much of the definition of the offense, either in terms of the common law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of what offense is intended to be charged.

"B. The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference." [Emphasis added.]

The gist of the offense is the signing of the name of another or fictitious person with intent to defraud. It is not necessary that the document be described. The use of the name of the crime, "forgery," makes the charges sufficient under Rule 115, subsec. A (1). The description of the manner in which the crime was committed sufficiently notifies defendant of what offense is intended to be charged. Any further information required could be obtained by a bill of particulars. Refer-

ence is also made to the statute itself to further notify defendant of the charges against him. We have held in many cases that an information in the language of the statute is sufficient. State v. Miller, 100 Ariz. 288, 413 P.2d 757; State v. Burgess, 82 Ariz. 200, 310 P.2d 822; State v. Gordon, 79 Ariz. 184, 285 P.2d 758; State v. Poole, 59 Ariz. 44, 122 P.2d 415; and Adkins v. State, 42 Ariz. 534, 28 P.2d 612.

Defendant next contends that reversible error was committed when Lawrence White, a witness for the State, testified as follows:

> "Q Would you tell us your full name, please sir?
>
> "A Lawrence R. White.
>
> "Q What is your occupation, sir?
>
> "A I am secretary of the Arizona State Prison.
>
> "Q What sort of an institution is that, sir?
>
> "A It is a state institution.
>
> "Q And what is your function there, sir?
>
> "A Well, as secretary I keep, I am in charge of all of the records of the inmates, all of their past records and all their personal stuff they have there while they are incarcerated."

The purpose of this testimony was to show that certain prison records were in the handwriting of defendant so that the handwriting on the money orders could be compared with that on the prison records. At this point, defendant's counsel moved for a mistrial on the ground that White's testimony implied that defendant had been an inmate in the State Prison—a matter which is usually reversible error to show, except for purposes of impeachment of defendant's testimony. The judge, feeling that White could not adequately identify defendant's handwriting, considered that his testimony had been improperly admitted. He overruled the motion for a mistrial, but admonished the jury to disregard the testimony. Defendant contends that the admonition was inadequate to cancel the error of admitting the testimony.

 Whether the error was reversible error depends upon whether prejudice resulted, i. e., whether it is reasonably probable that the verdict would have been different if the testimony had not been admitted. State v. Ybarra, 97 Ariz. 200, 398 P.2d 905. However, we need not inquire into such probability since defendant waived the error by his own subsequent testimony. He took the stand in his own behalf and admitted having been previously convicted of a felony. Having admitted the fact that he claims was a prejudicial implication from White's testimony, he eliminated any error from the admission of testimony that might give rise to such implication. State v. Ybarra, supra.

In Ybarra we cited with approval State v. Pigott, 1 Ohio App.2d 22, 197 N.E.2d 911, in which a police officer testified concerning a conversation that he had with the defendant. The officer was permitted to testify that in his conversations with the defendant, the latter admitted to him, in response to a question as to whether defendant had a previous record for sex crimes, that he did have such a record. The testimony was permitted over the objection of the defense. Argument on the objection to the testimony followed. Defense counsel moved for a mistrial at that time. Following argument, the court ruled the testimony inadmissible, struck it from the record, overruled the motion for a mistrial, and instructed the jury that such testimony was stricken from the record and that "you are to disabuse your minds of that answer and totally disregard that answer for any reason whatsoever in this trial." *Up to this time defendant had not testified, and had not put his character in issue.* The court held:

> "We conclude * * * that it was error for the court to allow the introduction of this testimony, and to permit the jury to cogitate upon it overnight. * * * There still remains the question as to whether or not this instruction alone

cures the prejudicial nature of this testimony under the circumstances. It is our view that since defendant testified in his own behalf, and admitted the conviction and record of the earlier sex crimes, whatever error was committed has been cured."

Defendant, however, states in his brief that he took the stand for the purpose of rehabilitation—that he was compelled to take the stand to soften the damaging testimony of Lawrence White. The record of the case does not support this contention. His defense was that of an alibi. His direct testimony was to show that he could not have been at the place of the commission of the crime because of his physical condition. He also attempted by his testimony to show that Officer Watzek was biased and prejudiced. He stated the officer had picked him up about fifteen or twenty times, also in answer to questions. Testimony further shows:

"Q Would you tell the Court and the jury the nature of those contacts?

"A Well, he is always picking me up and bringing me down to the courthouse, going up to my house in the middle of the night, and everything else like that.

"Q And more specifically what has happened on the times you have been picked up and brought down here?

"A He questions me and all of that, you know. Now he never does book me. Then he lets me go up here, and I have to go home by myself by walking and everything else.

"Q Has this officer ever made any statements to you about getting you eventually?

"A Yes, he has.

"Q And how many times have those statements been made to you?

"A Two or three times."

It was only an recross-examination by the State that defendant testified that he had been convicted of a prior felony; it was in answer to the question of the deputy county attorney that he testified that this felony was that of aggravated assault.

Courts in other jurisdictions have held admission of such evidence under the circumstances not to be prejudicial error. See: People v. Booth, 72 Cal.App. 160, 236 P. 987; People v. Mathis, 63 Cal.2d 416, 46 Cal.Rptr. 785, 406 P.2d 65; and State v. Willis, 67 Wash.2d 681, 409 P.2d 669.

We hold that under the facts of the instant case the court did not err in denying defendant's motion for a mistrial based upon the admission of White's testimony which was later stricken from the record and the jury admonished to disregard it.

Defendant further contends that the trial court erred in overruling his objection to the testimony of James Stuard. On the stand Stuard related a conversation allegedly held in defendant's presence, which, if believed by the jury to have taken place, would have implicated defendant in the commission of the crime of forgery. Defendant objected to the admission of Stuard's testimony, arguing that no proper foundation had been laid as to the time of the conversation. Defendant advances the argument that because he interposed the defense of alibi, the State became obligated to prove the exact day of the commission of the crime.

Criminal Rule 118, 17 A.R.S., provides that an indictment or information need not contain an allegation of the time of the commission of an offense unless such allegation is necessary to charge the offense.

In State v. Simmering, 89 Ariz. 261, 361 P.2d 4, where the defense of alibi was interposed, we upheld the following instruction, which was given in the instant case as well:

"You are instructed that the State need not prove that the crime charged was committed on the exact day or days charged in the Information. If you find that the defendant committed the crime as I have defined it to you, it is then sufficient, if the evidence shows beyond a

reasonable doubt the crime was committed on or about * * *"

We further held:

" * * * And, by a mere imposition of a defense of alibi, defendant cannot compel the state to elect an exact day."

█ Because of the foregoing, it is clear that no reversible error was committed by failing to require the State to establish an exact date for the admission of the testimony of Stuard. Stuard was asked the following question:

"Q Where were you on January 16, 1966, over a year ago now, in the evening hours of that day?"

To which he replied:

"A Well I can't quite remember the date, but I was going towards the Big Bear market."

Before any evidence of alibi was introduced, the State had established the "on or about" dates by the testimony of Kenneth Erickson, manager of Bashas' Market, where defendant had attempted to pass one of the money orders; by Robert Week, the policeman who apprehended Stuard on the day on which the events took place; and also by John Baldwin, a clerk in El Rancho Market at that time.

█ Even if there was technical error in the court's ruling, the testimony which followed cured the error, and defendant suffered no prejudice therefrom.

█ Lastly, the contention of defendant that there is no evidence that Mary Stuard is a fictitious person is without foundation. The evidence was to the effect that the name Mary Stuard was written by defendant, and that none of the interested parties knew a person by that name. Jordan-Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N.E. 740, 22 L.R.A.,N.S., 250. There is substantial evidence from which the jury could find that defendant forged the name Mary Stuard on the money orders with intent to defraud.

Judgment affirmed.

UDALL, V. C. J., and STRUCKMEYER, BERNSTEIN and LOCKWOOD, JJ., concur.