539 P.2d 173

**STATE of Arizona, Appellee,**

v.

**Billy Ray BANKS, Appellant.**

**No. 2 CA–CR 588.**

Court of Appeals of Arizona,
Division 2.

Aug. 26, 1975.

Rehearing Denied Sept. 25, 1975.

Review Denied Oct. 21, 1975.

Bruce E. Babbitt, Atty. Gen. by John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Kenneth J. Peasley, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Billy Ray Banks was originally charged with three counts of armed robbery and three counts of kidnapping arising out of one incident, and one count of robbery and one count of attempted kidnapping arising out of another incident. The last two charges were severed and tried separately. At the first trial, Mr. Banks was convicted of the three counts of armed robbery and acquitted on the three counts of kidnapping. At the second trial, he was convicted on both the robbery and attempted kidnapping counts. He was sentenced to not less than ten nor more than twenty years in the Arizona State Prison for the robbery convictions and not less than four nor more than five years for the attempted

kidnapping charge; all sentences to run concurrently.

Four questions are raised on appeal. With regard to the first trial, appellant claims that the trial court erred in refusing defendant's requested instructions on self-defense, and that it was further error to admit testimony over appellant's objection which disclosed to the jury that he had been incarcerated previously at the Arizona State Prison. With regard to the second trial, appellant claims error in the trial court's refusal to grant a directed verdict of acquittal where the evidence shows (according to appellant) mere presence at the crime scene. He further claims that it was fundamental error for the trial court to have failed to instruct the jury concerning the possibility that the facts showed he was an accessory after the fact, even though such an instruction was not requested.

The facts presented at the first trial were that appellant and Mr. Nelson approached the victims Larry Galey, Perry Menchaca and Paul LaValley at approximately eleven o'clock p. m. on November 9, 1974, and a conversation ensued regarding the purchase of drugs. The victims indicated an interest and all five men then proceeded to the La Reforma project where Nelson and appellant were to procure the drugs.

Galey went with Banks and Nelson, while Menchaca and LaValley remained in the car. After some time passed and Galey had not returned, Menchaca and La-Valley began to be restless. They found two pieces of one-inch dowel on the floor of the car and placed them in their sleeves. Soon Galey ran from the building shouting that he had been "ripped off". Menchaca and LaValley tried to get him to explain, but could not. By the time they caught up with him, appellant and Nelson approached the three of them and asked if they had "called the cops" to which they replied in the negative.

LaValley had his hands in his pockets and Nelson asked him if he had a gun, to which he replied "what if I do?" Appellant then grabbed Galey around the throat and held a knife above his chest. Appellant then told all three to empty their pockets on the hood of the car which they did. Nelson and appellant then collected the money.

The facts presented at the second trial were that the victim Mr. Mendez was attempting to make a telephone call in a booth, when Mr. Nelson approached the booth and told him he had to have "a fix". Mendez initially told him he did not have any money. Nelson then pointed out to the victim that appellant was standing nearby with a gun pointed at him and that he (Nelson) had a knife. After asking the victim if he had "ever been stabbed" or had "ever had blood running down your throat", the victim took ten dollars out of his wallet.

During the victim's conversations with Nelson, appellant walked around the telephone booth "a couple of times". When the victim tried to hand Nelson the ten dollars, it fell to the ground and blew outside the booth. Nelson then directed appellant to pick it up which he did. Appellant then stood directly outside the booth while Nelson instructed the victim that he and appellant were going to have to take him with them for fear that he would "snitch". Appellant grabbed one arm and Nelson the other and escorted the victim from the booth. The victim eventually broke their grasp and fled.

With regard to appellant's first question for review, it was appellant's testimony that he had armed himself with a knife in order to escape if Menchaca, LaValley and Galey turned out to be police officers. His version of the incident is completely different than that of the other witnesses. According to appellant when they got to La Reforma, Galey, appellant and Nelson left the other at the car and went around the corner. Galey gave appellant six dollars for LSD and appellant then left to get the drug. It was appellant's intention to

"rip-off" Galey by giving him pieces of paper with water on it rather than any drugs.

When appellant returned, Galey was no longer there, having been sent back to the car by Nelson. Appellant and Nelson decided to return to the car rather than leave with the six dollars since they did not want to jeopardize a $4,500 deal they had planned for the next day with a brother of one of the victims.

As they walked up to the car, they saw Galey walking around the corner towards the car. Menchaca and LaValley were there. Appellant thought that Galey had called the police. Nelson asked LaValley if he had a gun and LaValley put his hand in his coat pocket and made a motion as if he had a pistol. Appellant then grabbed Galey, held a knife on him and instructed the trio to empty their pockets in order to ascertain whether they were law enforcement officers. Upon finding no weapons nor any law enforcement identification, appellant released Galey, threw the knife away and apologized for the misunderstanding. They then started talking about shooting heroin. The trio stated that they had never shot heroin and gave appellant their money to buy some heroin in order to see what it was like.

It was appellant's theory that he drew the knife in self-defense. Ergo, the necessary element of force or fear necessary for the crime of robbery was lacking. Assuming, arguendo, that such a defense was available under the facts of the case we find a factual flaw in this theory. The right of self-defense does not entitle one to assault a third person. Appellant's actions were directed towards Galey and not the person who purportedly constituted the threat. The right of self-defense does not include taking a third person as a hostage. The court did not err in refusing instructions on self-defense.

Appellant's second claim of error is that he was prejudiced by the statement of a witness that he had been previously incarcerated at the Arizona State Prison. The difficulty with this claim is that appellant waived his right to claim that the statement had a prejudicial effect on the jury when he chose to take the stand and testify that he had previously been convicted of burglary and forgery and had spent time at the prison. *State v. Sianez*, 103 Ariz. 616, 618, 447 P.2d 874 (1968).

Appellant's third claim of error involves the trial court's refusal to grant his motion for a directed verdict of acquittal. We find appellant's claim that the evidence supports no other conclusion than that his only involvement in the crime was his "mere presence" at the scene, to be without merit. There is sufficient evidence for the jury to have found that appellant actively participated in the crime.

This brings us to appellant's final contention which is that although he did not ask for an accessory instruction, it was fundamental error for the trial court not to have given it on its own motion. He cites *State v. Evans*, 109 Ariz. 491, 512 P.2d 1225 (1973) for the proposition that in matters vital to the case, the trial judge is required to instruct the jury on its own motion, even if not requested by the defense. If, then, the trial court fails to so instruct the jury, such an omission creates fundamental error. He then claims that the facts support a finding by the jury that he was an accessory after the fact rather than an aider and abettor. Therefore, appellant claims an instruction on accessory after the fact was essential to his case and the failure to so instruct was fundamental error.

Again, we take issue with appellant's logic. It is clear that the facts support the finding by the jury that appellant actively participated in the robbery with full knowl-

**372**

edge thereof. A.R.S. Sec. 13–141 (as amended 1969) defines accessories as follows:

> "All persons who, after full knowledge that a felony has been committed, conceal it from the magistrate, or harbor and protect the person or persons charged or convicted or whom they have reason to believe committed a felony, are accessories."

The facts of the case are in no way compatible with this definition. Early in his brief, appellant argues that he was merely present at the scene, but did not participate in the actual robbery. The jury, of course, found that he had participated and there was sufficient evidence that he did.

 Having once conceded his presence at the scene, and knowledge of the commission of the crime, appellant cannot claim that he was an accessory after the fact. While the distinction between accessories before the fact and principals has been abolished, A.R.S. Sec. 13–138, and the phrase "after the fact" has been dropped from the definition of accessory, A.R.S. Sec. 13–137, it is clear that in order to be entitled to accessory status, the crime must have been completed outside the presence of the person claiming such status. We find this implicit in the wording of A.R.S. Sec. 13–141. The dropping of the phrase "after the fact" did not change the substance of the crime, but merely trimmed surplusage no longer necessary. The word "accessory" now means "accessory after the fact". In accord with the lack of presence requirement is *State v. Loveless*, 140 W.Va. 875, 87 S.E.2d 273 (1955). It was not error for the trial court to refuse appellant's request for an accessory instruction.

The judgment and sentences are affirmed.

KRUCKER and HATHAWAY, JJ., concur.