1999-NMCA-159

993 P.2d 745

**STATE of New Mexico,**
**Plaintiff–Appellee,**

**v.**

**Jeffrey COOPER, Defendant–Appellant.**

**No. 19,680.**

Court of Appeals of New Mexico.

Oct. 29, 1999.

Certiorari Denied, No. 26,064,
Dec. 21, 1999.

Patricia A. Madrid, Attorney General, Santa Fe, Max Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

Max Houston Proctor, Hobbs, for Appellant.

## OPINION

BOSSON, Judge.

{1} Defendant appeals his conviction for aggravated assault against a household member. The sole issue on appeal is whether the trial court erred in refusing Defendant's self-defense instruction. As an issue of first im-

pression, we hold that when an accused reasonably feels threatened by multiple assailants who appear to be acting in concert, and forcibly uses one assailant as a shield against the other, the accused is entitled to a self-defense instruction with regard to charges of assault against the person used as a shield. For the reasons discussed below, we reverse the trial court's decision rejecting the self-defense instruction and remand for a new trial.

## BACKGROUND

■ {2} The testimony of the witnesses conflicts considerably, and Defendant's recollection of the events in question is largely disputed by other witnesses. However, because the only issue on appeal is whether the trial court erred in denying Defendant's self-defense instruction, we examine the evidence from Defendant's point-of-view. *See State v. Gallegos,* 104 N.M. 247, 249–50, 719 P.2d 1268, 1270–71 (Ct.App.1986) (holding that element of self-defense is measured by viewing the circumstances from the standpoint of the defendant).

{3} Defendant was married to Collette Cooper (Collette), the victim in this case. At the time of the incident Defendant and Collette were separated, and some degree of distrust remained between them. Collette and a friend, John Oliver (John), drove to Defendant's home to retrieve Collette's personal belongings. Before departing, Collette called Defendant's home twice, leaving messages on his answering machine. In the first message, Collette is heard to ask, "Are you home?" Collette then appears to be talking to someone else saying, "he may not be there" and making a comment about the possibility of breaking the door down. In the second message, Collette is heard to say, "This is Collette, I see you haven't died yet, anyway look at the bright side." Defendant testified that he felt threatened by these messages based on past incidents of violence with Collette. Collette had previously stabbed Defendant after an argument, and on another occasion she had displayed an open knife in front of a witness, threatening Defendant with bodily harm.

{4} When Collette and John arrived at Defendant's home, Defendant saw Collette get out of the car with John, who was unknown to Defendant. Initially, Defendant testified, he did not fear Collette because she had recently visited his house without incident. Collette walked into the house, passing Defendant near the door without saying anything. When John approached the door behind Collette, Defendant testified that he saw a gun in John's hand. Although John did not say anything to Defendant or point the gun at him, Defendant became scared. He grabbed Collette, took her around the counter to grab a knife, and while holding Collette against her will, allegedly with a knife at her throat, Defendant told John that John would have to kill Collette to get to him. Defendant then kicked the door shut, locking John out and Collette in. John was no closer than four feet from the front door when Defendant kicked the door shut. Defendant then forced Collette into the bedroom. While holding the knife in his hand, Defendant told Collette to stay on the bed.

{5} At trial, Defendant was asked, "At what point did you become scared?" Defendant replied that he was scared when he saw John with the gun, and he added, "after that phone message I heard, I didn't know what the heck was going on." When Defendant was asked why he was afraid of Collette, Defendant testified that he was not afraid of Collette until he saw the gun. Defendant explained that he became afraid of Collette because, "well, if I'm watching another one, I don't know what the other one's doing." Defendant later testified that, after making Collette go to the bedroom, she smiled at him saying, "your day's coming."

{6} When asked if John ever tried to force his way into Defendant's house, Defendant testified that as he was taking Collette to the bedroom, John started kicking at the door and beating on it. Defendant stated that, "when you kick a door, to me that's trying to get through the door." After sheriff's deputies arrived on the scene, Defendant released Collette. Defendant was tried and convicted of aggravated assault against a household member under NMSA 1978, § 30-3-13 (1995), for his actions toward Collette.

## DISCUSSION

### Propriety of Self–Defense Instruction

{7} In New Mexico, an instruction on self-defense is warranted if there is any evidence, even slight evidence, supporting the claim. *See State v. Duarte*, 1996–NMCA–038, ¶ 3, 121 N.M. 553, 915 P.2d 309. The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo. *See State v. Salazar*, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. Thus, we do not weigh the evidence but rather determine whether "there is sufficient evidence to raise a reasonable doubt" as to whether Defendant using Collette as a shield was in self-defense. *State v. Ungarten*, 115 N.M. 607, 611, 856 P.2d 569, 573 (Ct.App. 1993). "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Trammel*, 100 N.M. 479, 481, 672 P.2d 652, 654 (1983).

{8} To justify the use of deadly force in self-defense, there must be some evidence that "an objectively reasonable person, put into Defendant's subjective situation, would have thought that [he or she] was threatened with death or great bodily harm, and that the use of deadly force was necessary to prevent the threatened injury." *Duarte*, 1996–NMCA–038, ¶ 8, 121 N.M. 553, 915 P.2d 309. In the usual case, self-defense is justified when force is directed toward a person posing a threat of imminent bodily harm. This case presents a unique twist on the normal use of self-defense. Here, the threat of force did not come from Collette, at least not directly; it came from John. Yet Defendant did not apply force to John; he took Collette hostage, holding her against her will by threatening her with a knife. In other words, Defendant forcibly used Collette as a shield to protect himself from a perceived threat that arose in large part from someone else.

{9} There is very little case law addressing a situation in which a defendant uses the victim as a shield to protect himself from an aggressor. In the human-shield cases we have located, the defendants wrongly used innocent third parties to protect themselves from the threatened harm. *See generally* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.7(g) (1986). For example, in *State v. Richardson*, No. CR–160417, 1982 WL 5367, at *5 (Ohio Ct.App. May 13, 1982), a store owner confronted the defendant believing the defendant to be the same man who attempted to rob his store the previous night. When the defendant turned to leave, the store owner shot him. The defendant grabbed an innocent third person as a shield against being shot again. The trial court refused to give a self-defense instruction against an assault charge because the defendant was not entitled to act aggressively toward an innocent bystander. *See State v. Banks*, 24 Ariz. App. 369, 539 P.2d 173, 174–75 (1975) (holding that a defendant who used a third person as a shield is not entitled to a self-defense instruction because his actions were not directed toward the person who constituted the threat). We agree that a defendant is not entitled to a self-defense instruction if his actions are taken against an innocent third party, whether he uses that third party merely as a shield or causes the person serious injury.

{10} Defendant argues that his case differs from these human-shield cases in that Collette was not a mere innocent bystander. Defendant claims to have reasonably believed that Collette and John were acting together, threatening him with serious harm, or at least a reasonable jury could so conclude under the circumstances. Defendant makes a legitimate point.

{11} When two or more persons undertake overt action to harm another, the victim may use an appropriate amount of force to defend himself against either aggressor, or both of them. If supported by the evidence, the defendant is entitled to a self-defense instruction in which the jury considers threatened harm from all assailants, not just the one against whom the defendant may have retaliated. *See Lerma v. State*, 807 S.W.2d 599, 601–02 (Tex.Ct.App.1991). In *Lerma*, a teenage defendant became fearful when two adults pushed, struck, and cursed him during an argument. The defendant observed that one of the adults possessed a

gun and believed that he would be killed. In reacting to such fear, he shot and killed the unarmed assailant. That court reversed the subsequent murder conviction for failing to give sufficiently broad jury instructions which included the theory of self-defense from the threatening behavior of both assailants, not only the aggressor with the gun.

{12} Another multiple assailant opinion from Texas, *Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App.1985) (en banc), is closer to the facts of this case. In *Frank*, an ex-wife, known to carry and use a knife, and her adult son, who had a reputation for violence, surprised the defendant at his house while allegedly retrieving her belongings after a bitter divorce. By the aggressive manner in which the two approached him, the defendant feared for his life, even though no weapons had been drawn. The defendant shot both of them, killing the ex-wife. Although the state argued that a multiple assailant instruction was unwarranted because the son had no weapon and he had not made a move as if to draw a weapon, the appellate court reversed the conviction. The self-defense instruction given by the trial court was too narrow; it only allowed the jury to consider the threat posed by the deceased ex-wife, and not the behavior of her son as well. The *Frank* court held that the defendant "is entitled to a charge on the right of self-defense against multiple assailants if 'there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant.'" *Id.* at 868 (quoting *Wilson v. State*, 140 Tex.Crim. 424, 145 S.W.2d 890, 893 (1940)).

{13} Other courts that have considered this question have held that a multiple aggressor self-defense instruction is warranted even when the person the defendant assaulted never posed a direct threat of bodily harm to the defendant, as long as there is evidence that the person the defendant assaulted participated or acted in concert with the assailant. *See Hayes v. Commonwealth*, 870 S.W.2d 786, 787 (Ky.1993); *Hoy v. State*, 69 Neb. 516, 96 N.W. 228, 229 (1903). In *Hayes*, for example, a group of men robbed the defendant in a liquor store parking lot

and a gunfight ensued. Immediately thereafter, the defendant observed a car stop abruptly in front of the liquor store and witnessed one of the robbers running toward it. While running toward the car, the robber saw the defendant and fired a gun at him. The defendant returned fire, killing a passenger in the car. The court found that the defendant could reasonably believe that there was no "safe harbor" because during the altercation, gunfire came from in front and in back of the defendant. On that basis, the court held that the failure to give a multiple aggressor self-defense instruction was reversible error. The court explained that "an argument can be made that the deceased was involved in the robbery of [the defendant] and was acting in complicity with other robbers who shot at [the defendant]. Whether [the defendant] was justified to use self-defense which resulted in the killing of the occupant of the car is a jury question." *Id.*, 870 S.W.2d at 789.

■ {14} We agree with *Hayes* and other courts that hold that a self-defense instruction is warranted when the evidence demonstrates that the person a defendant assaulted participated or acted in concert with an aggressor. *See Duckett v. State*, 966 P.2d 941, 946 (Wyo.1998) (finding " 'no apparent reason why an *"aggressor,"* for the purposes of [self-]defense, should be limited to the person directly threatening harm to the defendant' ") (quoting 2 Paul H. Robinson, *Criminal Law Defenses* § 131(b), at 73 (1984)); *see also Gordon v. State*, 193 Miss. 374, 9 So.2d 877, 878 (1942) (finding that when a defendant sees one assailant out of several with a deadly weapon threatening loss of life or great bodily harm, the defendant "does not have to stop to see whether or not the others are armed; he has the right to assume that they are acting in concert, and that each one is acting for all"); *State v. Green*, 157 W.Va. 1031, 206 S.E.2d 923, 926 (1974) (holding that the trial court committed reversible error in excluding a self-defense instruction against any or all assailants when the defendant reasonably believed a danger of bodily harm from multiple assailants existed).

{15} From these cases it is apparent that if both Collette and John were participating together or acting in concert, Defendant was entitled to defend himself against multiple assailants with appropriate force. It follows under this assumption that if some degree of force against Collette was justified, then surely using her as a shield against her fellow aggressor would be equally justified.

{16} In this case, a gun in John's hand would present a serious threat to Defendant that would justify using reasonable force against John. The question before us, therefore, is whether a self-defense instruction is warranted when: (1) the defendant reasonably believes two individuals are acting together; (2) the defendant reasonably believes that one of the individuals is acting in an overtly threatening manner, and the other does not; and (3) the defendant takes the other party as a hostage to prevent the two from carrying out the perceived joint threat. Under such circumstances, as long as there is some evidence indicating that Defendant reasonably believed that both individuals were acting together and that serious harm to Defendant was imminent, a jury question exists as to whether Defendant acted in self-defense.

{17} Viewed in the light most favorable to Defendant, the evidence supports his claim of multiple assailants acting in concert. Considering from Defendant's perspective Collette's prior stabbing and knife-wielding incidents, her threatening messages left on Defendant's answering machine, her presence at Defendant's home with an unidentified man, this man approaching Defendant with a gun at his side, and Defendant's testimony about why he feared them both at the moment he saw the gun, it is not unreasonable as a matter of law that a person in Defendant's position could believe that Collette and John shared a common plan to cause him physical harm, and that he would fear them both. Using Collette as a shield to prevent possible violence might be considered a reasonable response to the threatening situation. If such a response is not unreasonable as a matter of law, then Defendant was entitled to an opportunity to prove his defense theory, supported by an appropriate jury instruction.

{18} In response, the State notes that at one point Defendant testified he was not afraid of Collette. This is true. Arguably, this testimony conflicts with Defendant's theory that he believed Collette and John were acting together to threaten him with harm. However, as noted above, Defendant also testified that he "did not know what the other would be doing" while he was watching one of them, and that he was afraid of Collette, as well as John, at this point. As in *Hayes,* Defendant could reasonably believe that hostile action could come from in front or behind him; thus, the question of whether Defendant was fearful of Collette ·presents a classic issue for the jury to decide. Viewing the evidence in the light most favorable to Defendant, we must afford Defendant an opportunity to explain this ostensible inconsistency to the jury.

{19} We emphasize that self-defense is limited to those situations in which the person used as a shield or taken hostage is not an innocent bystander. Although the jury alone is the judge of the credibility of the witnesses and the weight to be given their testimony, *see* UJI 14–5020 NMRA 1999, we emphasize that when a defendant asserts a claim of self-defense under circumstances in which the defendant has used another as a shield and there is some evidence reasonably supporting such claim, the prosecution has the burden of negating such defense beyond a reasonable doubt.

{20} Two additional observations are in order. First, Defendant did not strike out with deadly force against Collette immediately upon seeing the gun in John's hand. Instead, Defendant used Collette as a shield to prevent further violence and then took her hostage. While Defendant may be allowed to invoke self-defense, the defense is available only to the point of using the force reasonably necessary to abate the imminent threat of life or bodily harm. *See Duckett,* 966 P.2d at 946 (holding that for self-defense to apply, the defendant must have a reasonable belief that the person is "associated and participating with the actual assailant, and

the force used against any aggressor is reasonable and necessary to prevent the harm").

{21} · Second, according to Collette's testimony, after John was locked out of the house, Defendant continued to threaten and assault her until the sheriff deputies arrived. Defendant denies this testimony. Because this matter is being remanded for a new trial, we again emphasize that self-defense would not apply once Defendant eliminated the threat of harm. Unless Defendant can demonstrate that his fear of being harmed continued after locking John out of the house, the defense would not cover alleged assaults during the intervening period between closing the front door and when the police arrived.

**Preservation**

{22} Defendant submitted a Uniform Jury Instruction on self-defense, alleging that there was an appearance of immediate danger when Defendant saw John with a gun and that, as a result of his fear, he grabbed Collette and held her with a knife. *See* UJI 14–5183 NMRA 1999. The instruction submitted by Defendant was deficient in one major respect. The instruction would have allowed the jury to find that Defendant acted in self-defense even without finding that he believed Collette was acting in concert with John. In other words, under the offered instruction, the jury could have found that Defendant acted in self-defense even though he believed Collette was an innocent bystander. As we have explained, this is not the law. Therefore, there is a question about whether Defendant properly preserved the self-defense instruction issue.

{23} A defendant need not offer a correct instruction unless no instruction is given on the issue in question on appeal. *See Santillanes v. State,* 115 N.M. 215, 218, 849 P.2d 358, 361 (1993). In this case, while there was no instruction on self-defense, the trial court did give an instruction on defense of property. Therefore, Defendant's general theory that his actions were justified was the subject of an instruction. Moreover, Defendant argued to the trial court that he was requesting a self-defense instruction because he was reasonably in fear of both John and Collette. Here, as in *Santillanes,* there was no uniform jury instruction on point, and Defendant's oral request, combined with Defendant's tendered (albeit incorrect) jury instruction, was sufficient to alert the trial court that a self-defense instruction was warranted. We also note that the trial court rejected Defendant's self-defense instruction, not because it was incorrectly phrased, but because in the trial court's opinion neither the evidence nor the law justified a self-defense instruction. Given the circumstances of this case, "Defendant's failure to tender in writing what he offered orally, when combined with the trial court's rationale for refusing to instruct ..., is not sufficient to hold an otherwise meritorious issue not preserved." *State v. Diaz,* 121 N.M. 28, 34, 908 P.2d 258, 264 (Ct.App.1995). Therefore, Defendant's efforts to present the issue to the trial court satisfied the threshold requirements for preservation.

**CONCLUSION**

{24} We reverse Defendant's conviction and remand for a new trial at which a proper self-defense instruction will be given, assuming the evidence at retrial warrants such an instruction.

{25} **IT IS SO ORDERED.**

DONNELLY and WECHSLER, JJ., concur.