This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. NO. 32,651

**DOUGLAS HODGMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

The Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

{1} Douglas Hodgman (Defendant) appeals his conviction for battery against a household member, contrary to NMSA 1978, Section 30-3-15 (2008). On appeal, Defendant contends that the district court erred in denying his request for a self-defense jury instruction. Defendant asks this Court to reverse his conviction and remand the case for a new trial. We hold that there was sufficient evidence to support a self-defense instruction. Accordingly, we reverse.

**BACKGROUND**

{2} In addition to the battery against a household member charge, Defendant was facing charges for aggravated assault against a household member (deadly weapon) (firearm enhancement), tampering with evidence, and conspiracy to commit tampering with evidence—all of which he was acquitted. Additionally, there were other defendants facing various charges for which they were acquitted. Because there were multiple defendants facing multiple charges, there were multiple witnesses who offered conflicting testimony during the jury trial in this case. However, because the issue on appeal is whether the district court erred in denying Defendant's self-defense instruction with respect to the charge of battery against a household member, we review the evidence from Defendant's point-of-view. *See State v. Cooper*, 1999-NMCA-159, ¶ 2, 128 N.M. 428, 993 P.2d 745 ("[B]ecause the only issue on

appeal is whether the trial court erred in denying [the d]efendant's self-defense instruction, we examine the evidence from [the d]efendant's point-of-view.").

{3}     Defendant and Jolena Hodgman (Victim) had been married for approximately nine and one-half years. Their marriage had deteriorated, and was effectively over in November 2009, when Defendant moved out of their house and into their jointly owned motorcycle shop. Occasionally, Defendant returned to the family home for a few days at a time until March 2010, when he started living at the motorcycle shop full-time.

{4}     In March 2010, Victim sent Defendant two emails indicating that she was considering purchasing a gun and asking Defendant—who was familiar with guns—his opinion on what type of gun she should buy. Defendant had a concealed handgun carry permit, routinely wore a handgun on his hip, had taught Victim how to use a gun in the past, and had additional guns at the motorcycle shop.

{5}     On June 7, 2010, Victim withdrew money out of their business account without informing Defendant that she was doing so. The following day, Defendant checked the account balance, noticed that $1,500 was missing, and froze the account. About an hour after Defendant froze the account, Victim went into the shop, walked past the receptionist at the front desk and into Defendant's office, and confronted Defendant about freezing the business's account. Less than a minute later, Defendant pushed

Victim out of his office, past the receptionist at the front desk, out the front door, and locked the door. As of that date, Defendant had been romantically involved with the receptionist for approximately one month.

{6} Defendant does not dispute that there was sufficient evidence to support his conviction for battery against a household member. Instead, he asserts that his conduct was legally justified because he believed Victim had a gun and might "shoot him." Defendant claims that the district court erred in denying his request for a self-defense jury instruction, which deprived him of his only defense at trial. He asserts that the evidence supported a finding of self-defense.

{7} During the trial, Defendant testified about the confrontation at the motorcycle shop. According to Defendant, he was sitting in the back office with his back to the door, working on his computer, when he heard Victim say: "You're in big trouble now." He testified that he felt "[k]ind of panicked . . . for a minute" because of "all that ha[d] been going on, and now she's coming through the door" and because Victim was not "the type of person to yell." He said that Victim's entry "scared the heck out of [him]."

{8} Defendant testified: "I was quite afraid at that point. I knew she had been talking about a gun and it had now been three months. It was possible to complete a conceal carry course and pass an FBI test and now be coming through the door with

4

a gun." Defendant continued to testify that he wanted Victim out of the shop because "[t]hings looked like they were about to escalate out of control, and I felt, let's just end this now, right now and let's deal with this off business hours, when I'm not trying to earn an income." When asked why he was afraid, Defendant responded:

> We all live on this earth, and if I wasn't happy, it's possible that she was equally not happy. And if she had been talking about buying a gun, I thought it was possible she was just coming to shoot me that day. You see it in the news. It's not so unusual.

Defendant testified that, based on this fear, he "escorted" Victim out the door. He said that Victim "had never charged through the door like that, yelling at me, before." According to Defendant and video footage from the shop's surveillance cameras, Victim was in Defendant's office for approximately thirty to thirty-five seconds on the day of the incident.

{9} In response to Victim's allegation that Defendant had pulled a gun on her, Defendant admitted that he had a gun on his right hip; however, he testified that he never pulled a gun on Victim because "[t]here was no reason to" because "I wasn't looking at a gun." Defendant admitted that he did not see Victim with a gun, but as he was standing there, he looked at Victim and "had to make some decisions." At that moment, he thought "she might have a gun. She isn't pointing one at me now. I want to end this situation. We will deal with it at a later date." One of the videos showed, and Defendant acknowledged, that after Victim went into his office, she put her hands

5

on her hips, pointed at him, and then put her hands on her hips again. Then she walked toward the office door and Defendant walked toward her and pushed her out the office door.

{10} Defendant also testified about the emails that Victim sent him in March 2010. On direct examination, Defendant testified: "I felt threatened just by their own nature, and then knowing the relationship, the resentment and anger growing over time, I felt threatened by them." On cross-examination, Defendant admitted that Victim did not threaten him in "[t]he email in and of itself."

{11} After the confrontation in the shop, the receptionist called 911. Defendant spoke to the 911 operator and said Victim had "raided [his] accounts" the night before and that she was "disrupting [his] business." He also stated that Victim went in the shop, "caused a big fight[,]" and he "lost customers." When asked if Victim yelled at or threatened Defendant, he responded: "Yes. . . . [S]he came in and said, 'You're in big trouble now.' . . . I told her to leave. She would not leave. . . . I physically threw her out[.]" When asked if he saw Victim with any weapons, Defendant told the 911 operator, "[n]o, I did not" and "[n]ot that I'm aware of." ] When asked if Victim had liquor or drugs, Defendant responded: "[n]ot that I'm aware of. She's just crazy[.]"

6

{12} In light of his asserted fears stemming from the angry shop confrontation and from Victim's previous emails about purchasing a weapon, Defendant requested the following self-defense jury instruction with respect to the charge of battery against a household member:

> Evidence has been presented that [D]efendant acted in self[-]defense. [D]efendant acted in self[-]defense if:
>
> 1. There was an appearance of immediate danger of bodily harm to [D]efendant as a result of [Victim] barging into the shop area after previously sending emails indicating she was going to obtain firearms and a concealed permit to carry them which . . . Defendant interpreted as threatening in nature; and
>
> 2. [D]efendant was in fact put in fear of immediate bodily harm and placed his hands on [Victim] in order to remove her from the shop as a result of that fear; and
>
> 3. [D]efendant used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and
>
> 4. The force used by [D]efendant ordinarily would not create a substantial risk of death or great bodily harm; and
>
> 5. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.
>
> The burden is on the state to prove beyond a reasonable doubt that [D]efendant did not act in self[-]defense. If you have a reasonable doubt

7

as to whether [D]efendant acted in self[-]defense, you must find [D]efendant not guilty.

*See also* UJI 14-5181 NMRA. The district court denied the requested jury instruction.

## DISCUSSION

### A. Preservation

{13} The State concedes that Defendant adequately preserved the self-defense issue because Defendant's proffered instruction included the provision that "[t]he force used by [D]efendant ordinarily would not create a substantial risk of death or great bodily harm." The committee commentary to UJI 14-5181, however, states that this provision is to be used only if there is evidence that the defendant used force that ordinarily would not cause death or great bodily harm, but that nevertheless resulted in death or great bodily harm. Here, there was no evidence that Victim suffered great bodily harm; therefore, inclusion of the referenced provision was inappropriate. Defendant tendered a written instruction, orally requested a self-defense instruction, and argued that "[h]e was afraid for his personal safety." In refusing to give the self-defense instruction, the district court articulated the applicable legal standard, considered Defendant's testimony, and reviewed the relevant case law. Therefore, the district court understood that Defendant was requesting a self-defense instruction and

8

this issue was preserved for appellate review. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537.

**B.      The Evidence Presented at Trial Supported a Self-Defense Instruction**

**{14}**      "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *Cooper*, 1999-NMCA-159, ¶ 7. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s]." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (alteration in original) (internal quotation marks and citation omitted). A defendant is entitled to a jury instruction on his theory of the case if there is evidence to support the instruction. *State v. Emmons*, 2007-NMCA-082, ¶ 7, 141 N.M. 875, 161 P.3d 920. Failure to give such an instruction is reversible error. *Jernigan*, 2006-NMSC-003, ¶ 3.

**{15}**      "[S]elf-defense is justified when force is directed toward a person posing a threat of imminent bodily harm." *Cooper*, 1999-NMCA-159, ¶ 8. In this case, Defendant would have been entitled to a self-defense instruction if there was evidence that (1) "[D]efendant was put in fear by an apparent danger of immediate bodily harm," (2) "his [actions] resulted from that fear," and (3) "[D]efendant acted as a reasonable person would act under those circumstances." *State v. Lara*, 1989-NMCA-098, ¶ 7, 109 N.M. 294, 784 P.2d 1037, *overruled on other grounds by*

9

*State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. This hybrid test combines both subjective and objective standards.

> The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant.

*State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477.

**{16}** While the evidence must support "every element of that defense," *Emmons*, 2007-NMCA-082, ¶ 7, "there need be only enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170; *see also State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438 (stating that the appellate courts "do not weigh the evidence but rather determine whether there is sufficient evidence to raise a reasonable doubt about self-defense"). "If any reasonable minds could differ, the instruction should be given." *Rudolfo*, 2008-NMSC-036, ¶ 27.

**{17}** Defendant argues that the district court should have instructed the jury on the issue of self-defense because he "took the stand and testified directly about his subjective fear that his estranged wife presented a threat of immediate bodily harm." Additionally, he claims that his actions were "reasonable under the circumstance."

10

**{18}** We acknowledge that Defendant testified that he acted out of fear when he pushed Victim out of his office, past the front desk, and out the front door. According to Defendant:

> [H]e was surprised by his wife's sudden appearance in his office and was frightened by her anger because she had recently sent him e-mail[s] indicating that she was considering buying herself a handgun, which [Defendant] interpreted as a veiled threat. . . . [H]e was frightened by his wife's anger, the e-mail[s], and her sudden appearance, and . . . he feared that she might shoot him.

**{19}** While the district court expressed doubt regarding whether Defendant acted out of fear, we view the evidence in the light most favorable to submission of the jury instruction and thus assume Defendant subjectively feared Victim. *See Coffin*, 1999-NMSC-038, ¶ 15 (stating that the first two self-defense requirements—immediate danger and actual fear—are based on the *defendant's* perception at the time of the incident). Accepting that Defendant had a subjective fear of immediate bodily harm, we conclude that whether Defendant's actions were reasonable or not under an objective standard should have been decided by the jury. *Id.* (stating that the third self-defense requirement is objective and "focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant").

**{20}** Whether a reasonable person would have pushed his estranged wife out of his office, past the front desk, and out of the front door of their jointly owned business

11

within thirty to thirty-five seconds of her confronting him about freezing their business account, based on a fear that "she *might* be armed with a gun, and that she *might* resort to using it *if* he allowed the situation to escalate" is a classic jury question. Some of the evidence runs counter to Defendant's position. For example, Defendant admitted that he did not see Victim with a gun, he did not know if she had a gun, and he did not know if she was under the influence of liquor or drugs. There was no evidence that Victim made any gesture or immediate threat during the confrontation that would suggest she had a weapon or was reaching for a weapon that was concealed. The evidence showed that Victim walked into Defendant's office, put her hands on her hips, pointed at Defendant, put her hands on her hips again, and walked toward the office door before Defendant walked toward Victim and pushed her out. We have already recounted the evidence favoring Defendant's position. Viewing Defendant's testimony in the light most favorable to giving the instruction, we hold that the jury should have been allowed to decide whether his response was reasonable.

**CONCLUSION**

{21}     For the foregoing reasons, we conclude that the evidence supported a finding of self-defense, and the district court should have given a correct jury instruction.

Therefore, we reverse Defendant's conviction for battery against a household member and remand for further proceedings consistent with this Opinion.

{22} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**